1   Peter B. Maretz (SBN 144826)
2   Gabriella S. Han (SBN 322932)
    JACKSON LEWIS P.C.
3   225 Broadway, Suite 1800
    San Diego, California 92101
4   Telephone:   (619) 573-4900
    Facsimile:    (619) 573-4901
5   Peter.Maretz@jacksonlewis.com
6   Gabriella.Han@jacksonlewis.com

7   Attorneys for Defendant
8   WERNER ENTERPRISES, INC.

9                   UNITED STATES DISTRICT COURT

10                 CENTRAL DISTRICT OF CALIFORNIA

11  PAULA DOMINGUEZ, an individual,        Case No.:

12           Plaintiff,

13       v.                                 **DECLARATION OF PETER B.
                                            MARETZ IN SUPPORT OF
14                                          DEFENDANT WERNER
    WERNER ENTERPRISES, INC., an            ENTERPRISES, INC.'S NOTICE OF
15  unknown business entity; GREGORY        REMOVAL PURSUANT TO 28 U.S.C. §
16  GRIMES, an individual; and DOES 1       1441
    through 25, Inclusive,
17
             Defendants.
18

19

20       I, Peter B. Maretz, Esq., declare as follows:

21       1.    I am an attorney licensed to practice law in the State of California and

22  admitted to appear before this Court. I am an Income Principal with the law firm of Jackson

23  Lewis P.C., attorneys of record in this matter for Defendants WERNER ENTERPRISES,

24  INC. ("Defendant") with the exception of matters based on information and belief, I have

25  personal knowledge of the matters stated herein, and if called to testify as to these matters,

26  I could and would do so competently.

27       2.    Attached hereto as Exhibit A is a true and correct copy of the process,

28

                                            1

pleadings, and orders served on Werner Enterprises, Inc. in the matter herein on August 14, 2025.

3.     Attached hereto as Exhibit B, is a true and correct copy of the Westlaw PeopleMap survey prepared by my staff at my direction and direct supervision.

4.     On July 25, 2025, counsel for plaintiff communicated to me a settlement demand of $9,000,000.00.

5.     To my knowledge, defendant Gregory Grimes has not been served with process in this matter as of my execution of this declaration, and my firm does not represent Gregory Grimes.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.

Executed this 12th day of September, 2025, at San Diego, California.

By:_____*/s/Peter B. Maretz*_____
                Peter B. Maretz

DECLARATION OF PETER B. MARETZ IN SUPPORT OF DEFENDANT WERNER
ENTERPRISES, INC.'S NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1441

# **<u>EXHIBIT A</u>**

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ELECTRONICALLY FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT
8/6/2025
By: Grace Powell, DEPUTY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WERNER ENTERPRISES, INC., an unknown business entity;
GREGORY GRIMES, an individual; and DOES 1 through 25,
Inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

PAULA DOMINGUEZ, an individual,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

  You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

  There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

  *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

  *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: Superior Court of California San
*(El nombre y dirección de la corte es):* Bernardino

247 W 3rd St, San Bernardino, CA 92415

| | |
|---|---|
| CASE NUMBER: *(Número del Caso):* | CIVSB2522028 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Joshua Gruenberg, Esq. GRUENBERG LAW 2155 First Avenue San Diego CA 92101 (619)230-1234

| | | | |
|---|---|---|---|
| DATE: *(Fecha)* | 8/6/2025 | Clerk, by *(Secretario)* /s/ Grace Powell | , Deputy *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010)).*

[SEAL]

NOTICE TO THE PERSON SERVED: You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

  under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Joshua D. Gruenberg, Esq. SB #163281
Samantha N. Wasiluk, Esq. SB #345660
Julia A. Aguilar, Esq. SB #356771
GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-3542
TELEPHONE: (619) 230-1234
TELECOPIER: (619) 230-1074

ELECTRONICALLY FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT
7/30/2025 11:37 AM
By: Grace Powell, DEPUTY

Attorneys for Plaintiff,
**PAULA DOMINGUEZ**

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN BERNARDINO**

| | |
|---|---|
| PAULA DOMINGUEZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>WERNER ENTERPRISES, INC., an unknown business entity; GREGORY GRIMES, an individual; and DOES 1 through 25, Inclusive,<br><br>Defendants. | Case No. CIVSB2522028<br><br>**PLAINTIFF PAULA DOMINGUEZ'S COMPLAINT FOR:**<br><br>1. **SEXUAL HARASSMENT** [Cal. Gov't Code § 12940(j)];<br>2. **FAILURE TO PREVENT SEXUAL HARASSMENT** [Cal. Gov't Code § 12940(k)];<br>3. **ASSAULT;**<br>4. **SEXUAL BATTERY** [Cal. Civil Code § 1708.5]; and<br>5. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br><br>**[JURY TRIAL DEMANDED]** |

COMES NOW THE PLAINTIFF, alleging against Defendants as follows:

## THE PARTIES

1. Plaintiff, PAULA DOMINGUEZ (hereinafter "Plaintiff"), is a natural person who is, and at all relevant times was, a resident of the State of California, County of Los Angeles.

2. Plaintiff is informed and believes and thereon alleges that Defendant, WERNER ENTERPRISES, INC., (hereinafter "Defendant" or "WERNER"), is, and at all relevant times herein mentioned was, an unknown business entity doing business in the State of California, County of San Bernardino.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

3.    Plaintiff is informed and believes and thereon alleges that Defendant, GREGORY GRIMES (hereinafter "GRIMES," or collectively "Defendants"), is a natural person who is, and at all relevant times herein mentioned was, a resident of the United States and a domiciliary of the State of Texas, County of Bell.

4.    Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as DOES 1 through 25, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities when they are ascertained.

5.    Plaintiff is informed and believes and thereon alleges that Defendants, and DOES 1 through 25, are and at all times herein mentioned were either individuals, sole proprietorships, partnerships, registered professionals, corporations, alter egos or other legal entities which were licensed to do and/or were doing business in the County San Bernardino, State of California at all times relevant to the subject matter of this action.

6.    Plaintiff is informed and believes and thereon alleges that Defendants were acting within the purpose, course, and scope of said agency and/or employment to invoke vicarious liability and *respondeat superior* liability among other theories of liability to hold Defendants liable and responsible for the injuries and damages to Plaintiff.

7.    The tortious acts were authorized or ratified by upper-level managerial employees of Defendants. The actions of Defendants, and each of them, against the Plaintiff constitute unlawful practices in violation of California law, and have caused, and will continue to cause Plaintiff loss of earnings, loss of employment benefits, and other losses in amounts to be proven at trial.

8.    Defendants had constructive knowledge of the tortious acts and/or omissions alleged herein as the result of participating in the wrongful acts or ratifying or affirming the acts once heard or known of.

///

///

///

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

**JURISDICTION AND VENUE**

9.    This Court has jurisdiction under Article VI, Section 10, of the California Constitution and Code of Civil Procedure section 410.10 because the action involves issues of California law, and because the damages and penalties sought by Plaintiff exceed the minimum jurisdictional limits of the Superior Court of the State of California.

10.   Venue is proper in this county pursuant to Code of Civil Procedure §§ 395(a) and 395.5 in that liability arose there because at least some of the transaction that are the subject of this Complaint occurred therein and/or each Defendant is found, maintains offices, transacts business, and/or has an agent therein.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11.   Plaintiff was at all times material hereto an employee covered by California Government Code § 12940 *et seq.*

12.   Plaintiff is informed and believes and thereon alleges that Defendant WERNER is subject to suit under FEHA, California Government Code § 12940 *et seq.*, as it employs in excess of five (5) employees in San Bernardino and elsewhere.

13.   On or about July 25, 2025, Plaintiff filed his charge against Defendant with the California Civil Rights Department ("CRD"), and thereafter on that same day, Plaintiff received a "Right to Sue" letter from the CRD, collectively attached hereto as "Exhibit A."

**SPECIFIC FACTUAL ALLEGATIONS**

14.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

15.   On information and belief, Defendant WERNER ENTEPRISES, INC. is a trucking company specializing in freight shipping and logistics management.

16.   At all relevant times, as defined in the FEHA, Defendant GREGORY GRIMES was Plaintiff's direct supervisor.

17.   Although Paula is his legal name, Plaintiff prefers to be addressed as "Paul," and his preferred pronouns are he/him.

*///*

**Plaintiff's Employment with WERNER**

18.    On or about February 24, 2025, Plaintiff began his employment with WERNER at its Fontana terminal, located at 10251 Calabash Avenue, Fontana California 92335. WERNER employed Plaintiff as a cross-country class-A truck driver.

19.    On or about March 10, 2025, Plaintiff was informed by a driver liaison for WERNER that, due to a shortage of available truck driving trainers ("leaders") in California, Plaintiff would be sent to the WERNER terminal in Dallas, Texas, to be assigned an Over-the-Road trainer.

20.    On or about March 12, 2025, Plaintiff arrived at the Werner Dallas terminal located at 8701 Peterbilt Avenue, Dallas, Texas 75241. There, Plaintiff was assigned to Defendant GREGORY GRIMES ("GRIMES") as his leader and direct supervisor.

21.    On or about March 13, 2025, GRIMES picked Plaintiff up from the Werner Dallas Terminal. GRIMES requested Plaintiff's driver license and took a photograph of it, which Plaintiff believed was part of WERNER's standard onboarding procedure. Plaintiff complied.

22.    Between March 13 and March 16, 2025, GRIMES began sharing unsolicited and highly personal information with Plaintiff. He disclosed that he was a minister at his church, had served in the military, and worked in law enforcement in California before moving to Texas. He also spoke about his "common law wife" and children and stated that he was looking to cheat on his wife. These disclosures made Plaintiff uncomfortable and were unrelated to work. Plaintiff had not invited or encouraged such discussions.

23.    On March 17, 2025, Plaintiff informed GRIMES of his sexual orientation and gender identity. In that conversation, Plaintiff explained that he was gay and attracted to women. GRIMES responded positively and commented that it was common for female truckers to be gay.

///

///

///

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

**Plaintiff is Repeatedly Raped by GRIMES**

24.    On or about March 18, 2025, Plaintiff and GRIMES stopped at a truck stop for the night. GRIMES asked Plaintiff whether he preferred the top or bottom bunk bed in the truck's can. Plaintiff indicated he had no preference. GRIMES assigned Plaintiff the bottom bunk, claiming it was more comfortable.

25.    A few minutes after Plaintiff laid in bed, GRIMES began a conversation by asking if Plaintiff was tired. Plaintiff replied affirmatively. GRIMES stated that he was not very tired and began speaking again about his personal life. He then descended the bunk ladder, retrieved water from the fridge, and sat uninvited on the edge of Plaintiff's bed. Plaintiff was visibly uncomfortable and scooted away from him and towards the wall of the truck. GRIMES then said that he was getting sleepy, and Plaintiff suggested that they both go to sleep since they had to wake up early. GRIMES agreed, then laid down beside Plaintiff in the same bed without consent. When GRIMES asked if it was okay to lie next to him, Plaintiff stated, "No, that's not fine. I'm not comfortable with that," or words to that effect. GRIMES attempted to make an excuse that the top bed was less comfortable, to which Plaintiff offered to switch beds. Plaintiff then instructed GRIMES to get up so that he could sleep on the top bed.

26.    Suddenly, GRIMES bear hugged Plaintiff and aggressively told Plaintiff to listen to him and said, "I have had disobedient students in the past and had them removed from the truck," or words to that effect. In that moment, Plaintiff believed that GRIMES was insinuating that if he did not comply, GRIMES would remove him. GRIMES went on to say, "If I tell WERNER, you don't know what you're doing on the truck, you won't have a job anymore. Do you want your trucking career to end before it even starts?" or words to that effect.

27.    Plaintiff was in complete shock and froze. As GRIMES held Plaintiff down, he asked if he could kiss Plaintiff. Plaintiff responded, "No, I don't want you to kiss me." GRIMES asked why, and Plaintiff reminded him that he is not attracted to men, that he likes women. GRIMES expressed attraction towards Plaintiff and asked to "try anyway," or

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

words to that effect. Plaintiff again said no. GRIMES continued pressuring him asking about his sexual history, and then declared that because he and his wife were abstinent, he "needed to get it from somewhere." He told Plaintiff, "You have to listen to me. We can either do this the easy way or the hard way. Either you let me do what I want to do, or you'll see," or words to that effect. GRIMES then explained how he would be untouchable if Plaintiff ever attempted to report him, claiming that nothing would happen to him given his prior law enforcement background. He also claimed that no one would believe Plaintiff because he was a minister. GRIMES then asked Plaintiff, "Yes, or no?" Plaintiff said no. GRIMES responded, "It's not yes or no if you want to or not – you have to."

28.     GRIMES then forcefully undressed Plaintiff, took his own clothing off, and proceeded to rape him violently. Plaintiff screamed during the assault as GRIMES forcefully held him down by his limbs, neck, and hair. While Plaintiff was screaming, GRIMES said, "Scream all you want. No one would be able to hear you," or words to that effect. Plaintiff tried to push GRIMES off of him, but due to Plaintiff's petite size (Plaintiff weighed eighty-six pounds), his efforts were unsuccessful. The assault lasted over an hour and left visible physical injuries and blood on the bedding.

29.     Between March 18 and April 3, 2025, GRIMES raped Plaintiff repeatedly in the truck, in various cities across Texas, Oklahoma, Kansas, and Arkansas. Sometimes GRIMES raped Plaintiff twice a day. GRIMES strangled Plaintiff several times while he was raping him, reminding him that he had his home address. GRIMES also installed red LED lights in the truck and referred to the lights as "The Red Light Special." When Plaintiff attempted to leave, GRIMES reminded him, "I can request you to get off my truck and you will fail. Do you want that?" or words to that effect. After each attack, GRIMES followed Plaintiff to the restrooms and waited outside to ensure Plaintiff did not speak to anyone. GRIMES also confiscated Plaintiff's phone during their time together, and when Plaintiff received or needed to make a call, he instructed Plaintiff to place the call on speaker phone and to speak in English with the caller.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

30.    GRIMES also made homophobic comments towards Plaintiff after the rapes, spitefully saying, "Guess you're not gay anymore," "You're not gay because I say so," "I thought you said you liked girls," or words to that effect.

31.    When GRIMES raped Plaintiff, he used sexual lubrication. Plaintiff noticed that the first time he brought out the lubrication bottle, it was half empty.

32.    Additionally, after the first rape, GRIMES demanded oral sex. The first time GRIMES demanded oral sex, Plaintiff, crying and in fear, said "No, just kill me now," to which GRIMES replied, "No. But you will wish you were dead," or words to that effect.

33.    As a result of repeatedly raping Plaintiff, GRIMES left bruises all over Plaintiff's legs, ankles, back, arms, wrists, and neck.

34.    On April 3, 2025, GRIMES dropped Plaintiff off at the WERNER terminal in Dallas so that Plaintiff could complete his testing. As Plaintiff was leaving, GRIMES mentioned that he would have another female driver to train and said, "This should be interesting and fun." Plaintiff interpreted that statement as a threat of future sexual violence.

35.    Later that evening, GRIMES called Plaintiff and asked if he could deliver a testing document to Plaintiff's hotel room. Plaintiff agreed, believing the visit was professional. GRIMES arrived without the document. Once inside, GRIMES made unwanted advances and threatened Plaintiff, "You better not tell anybody," or words to that effect. GRIMES then forcefully grabbed Plaintiff and pushed him onto the bed wherein he proceeded to rape him. After the rape, GRIMES ordered Plaintiff to shower while he watched from the doorway, instructing him to "clean the inside with your fingers," or words to that effect. Plaintiff believed that GRIMES was attempting to destroy physical evidence of the rape. When GRIMES left the hotel room, he told Plaintiff that he would be outside the whole night, just in case Plaintiff wanted to tell anybody what had happened.

36.    On or about April 5, 2025, Plaintiff returned to California. GRIMES contacted Plaintiff and reminded him that he had a picture of his California driver's license and knew where he lived. Plaintiff was scared to report the rapes out of fear that GRIMES would physically hurt him.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

37.  On or about April 8, 2025, Plaintiff got tested for sexually transmitted diseases and tested positive for Chlamydia. Plaintiff was also diagnosed with cervicitis and vaginitis. Plaintiff believes that GRIMES transmitted the disease given that GRIMES did not use protection during the repeated assaults.

38.  On or about April 11, 2025, GRIMES called Plaintiff, claiming he wanted to see how he was doing. However, Plaintiff believed that GRIMES called him to check if he had reported the rapes to anyone. During the phone call, Plaintiff told GRIMES used his power and authority as a supervisor to abuse him. GRIMES then acknowledged, "You did not consent and I still did anyway," or words to that effect. GRIMES claimed he would kill himself if Plaintiff reported him to WERNER, the police, or his wife.

39.  On or about April 15, 2025, GRIMES called Plaintiff again and acknowledged that he had given Plaintiff chlamydia.

### Plaintiff is Sexually Harassed by Another Male Truck Driver

40.  On April 13, 2025, Plaintiff was paired with a new driving partner, David Smith ("Smith"). Within a few days, Smith noticed Plaintiff frequently suffered from nightmares. Smith persistently questioned Plaintiff about the nightmares until Plaintiff disclosed that he had been sexually assaulted by GRIMES. Though Plaintiff shared limited details of the rapes due to trauma and shame, Smith understood the severity. He told Plaintiff GRIMES belonged in jail, but also warned Plaintiff not to mention their conversation out of fear it could jeopardize his own job for failing to report the assault.

41.  During the week that Plaintiff and Smith worked together, from April 13, 2025, to April 20, 2025, Plaintiff observed Smith watching pornography on his phone every evening in the driver's seat of the truck. Smith also frequently urinated in a plastic bottle in front of Plaintiff. Plaintiff did not see his penis but could hear his urine filling the bottle. These behaviors made Plaintiff uncomfortable, and he requested reassignment. However, Plaintiff did not specify to WERNER the reasons why he felt uncomfortable with Smith. WERNER accommodated Plaintiff's request and partnered him with Aston Douglass ("Douglass").

**Plaintiff's Sexual Assault is Reported to Defendant WERNER**

42. On or about April 17, 2025, Plaintiff told Douglass about Smith's pornography and urinating in bottles. On her own accord, Douglass then contacted the WERNER Safety Department to report Smith.

43. On or about April 23, 2025, shortly after Douglass became Plaintiff's partner, Plaintiff confided to Douglass that GRIMES had repeatedly assaulted him. With Plaintiff's permission, Douglass called the WERNER Safety Department again and reported that GRIMES had raped Plaintiff, that Plaintiff had visible bruises on his body, that GRIMES had given Plaintiff a venereal disease, and disclosed Plaintiff's sexual orientation.

44. That same day, at approximately 1:30 PM, Plaintiff had a meeting with Kevin DeGoey ("DeGoey") of Human Resources and "Dixie" Norris ("Norris") of the Placement Driver and Trainer Assignment Department. During this meeting, Plaintiff reported that GRIMES had repeatedly raped him and disclosed that he was beginning to have suicidal ideations. Consequently, DeGoey and Norris told Plaintiff he would need to be medically cleared to drive.

45.  On or about April 30, 2025, Plaintiff had another meeting with DeGoey and Norris. However, the meeting was cut short due to cell phone reception. Oddly, DeGoey and Norris told Plaintiff that he needed to be medically cleared to drive because he was taking antibiotics. Plaintiff found the nonsensical, given that the antibiotics did not impair his ability to drive. The call was rescheduled for May 1, 2025.

46. On or about May 1, 2025, Plaintiff participated in a rescheduled meeting with DeGoey and Norris, during which he provided detailed information about the rapes that occurred between March 18 and April 3. The conversation lasted over forty-five minutes. Plaintiff also shared his belief that GRIMES had previously raped other female drivers and that he would continue to do so.

47. On or about May 1, 2025, Plaintiff spoke with "Shawnaye" from WERNER's Safety Department. During this call, Plaintiff was told that he would need medical clearance to drive due to his suicidal ideations.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

**Plaintiff Takes Medical Leave**

48.    On or about May 5, 2025, Plaintiff started his medical leave due to his struggling mental health. Plaintiff is currently on unpaid medical leave.

49.    As a result of Defendant GRIMES' sexual assault and Defendant WERNERS' failure to prevent sexual harassment, Plaintiff suffered and continues to suffer extreme emotional distress, anxiety, stress, and other damages.

**FIRST CAUSE OF ACTION**

**SEXUAL HARASSMENT**

**[Cal. Gov't Code § 12940(j)]**

**v. All Defendants**

50.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

51.    At all times mentioned herein, California Government Code section 12940 *et seq.* was in full force and effect and was binding on Defendant. This section requires Defendant, as an employer to refrain from sexually harassing any employee.

52.    Plaintiff was an employee of Defendant WERNER, as set forth herein.

53.    At all relevant times, GRIMES was Plaintiff's supervisor.

54.    Plaintiff was subjected to unwanted and harassing conduct on the basis of his gender, as set forth herein.

55.    The harassing conduct was severe and/or pervasive.

56.    A reasonable person in Plaintiff's circumstances would have considered the work environment to be hostile or abusive, and Plaintiff did in fact consider the work environment to be hostile or abusive.

57.    That a supervisor engaged in the unwanted and harassing conduct, or that Defendant knew or should have known of the harassing conduct Plaintiff was subjected to and failed to take immediate and appropriate corrective action.

58.    Plaintiff was and continues to be harmed.

59.    Defendants' conduct was a substantial factor in causing Plaintiff's harm.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

60.  As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits, employment opportunities, and Plaintiff has suffered other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

61.  As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff suffered emotional distress, to his damage, in a sum to be established according to proof.

62.  As a result of Defendants' deliberate, outrageous, despicable conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with Defendants' wrongful acts and sufficient to punish and deter future similar reprehensible conduct.

63.  In addition to such other damages as may properly be recovered herein, Plaintiff is entitled to recover prevailing party attorney's fees pursuant to Government Code section 12965(b).

## SECOND CAUSE OF ACTION

### FAILURE TO PREVENT SEXUAL HARASSMENT

### [Cal. Gov't Code § 12940(k)]

### v. Defendant Werner only

64.  Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

65.  Plaintiff was an employee of Defendant WERNER, as set forth herein.

66.  Plaintiff was subject to unwanted harassing conduct on the basis of his sex in the course of his employment, as set forth herein.

67.  Defendant is, at all times material hereto was, an employer within the meaning of the Fair Employment and Housing Act and, as such, barred from harassing Plaintiff on the basis of his gender and/or sex, as set forth in Cal. Gov't Code § 12940(j).

68.  Defendant failed to take reasonable steps to prevent the harassment as described herein.

69.  Plaintiff was and continues to be harmed.

70.  Defendant's failure to take all reasonable steps to prevent harassment was a substantial

factor in causing Plaintiff's harm.

71. As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits, employment opportunities, and Plaintiff has suffered other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

72. As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff suffered emotional distress, to his damage, in a sum to be established according to proof.

73. As a result of Defendant's deliberate, outrageous, despicable conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with Defendant's wrongful acts and sufficient to punish and deter future similar reprehensible conduct.

74. In addition to such other damages as may properly be recovered herein, Plaintiff is entitled to recover prevailing party attorney's fees pursuant to Government Code section 12965(b).

### THIRD CAUSE OF ACTION

#### ASSAULT

#### v. Defendant GRIMES only

75. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

76. Defendant GRIMES intentionally and unlawfully engaged in conduct that created a reasonable apprehension in Plaintiff of immediate harmful or offensive contact to his person, as described herein.

77. At no time did Plaintiff consent to any of the acts of Defendant GRIMES.

78. As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings, employment benefits, employment opportunities, and Plaintiff has suffered other economic losses in an amount to be determined at time of trial. Plaintiff has sought to mitigate these damages.

79. As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff suffered

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1    emotional distress, to his damage, in a sum to be established according to proof.

2    80.    Defendant GRIMES committed the acts alleged herein maliciously, fraudulently, and

3           oppressively with the wrongful intention of injuring Plaintiff from and improper and evil

4           motive amounting to malice and in conscious disregard of Plaintiff's rights. Plaintiff is

5           thus entitled to recover exemplary and punitive damages in amounts to be proven at trial.

6                                    **FOURTH CAUSE OF ACTION**

7                                        **SEXUAL BATTERY**

8                                      **v. Defendant GRIMES only**

9    81.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in

10          the preceding paragraphs as though fully set forth herein.

11   82.    As set forth above, Defendant GRIMES intended to cause a harmful or offensive contact

12          with Plaintiff's breasts and mouth, and a sexually offensive contact with Plaintiff

13          resulted, either directly or indirectly.

14   83.    Plaintiff did not consent to the touching.

15   84.    Plaintiff was harmed or offended by Defendant GRIMES's conduct.

16   85.    As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff has

17          sustained and continues to sustain substantial losses in earnings, employment benefits,

18          employment opportunities, and Plaintiff has suffered other economic losses in an amount

19          to be determined at time of trial. Plaintiff has sought to mitigate these damages.

20   86.    As a direct, foreseeable, and proximate result of Defendant's conduct, Plaintiff suffered

21          emotional distress, to his damage, in a sum to be established according to proof.

22   87.    As a result of Defendant GRIMES's deliberate, outrageous, despicable conduct, Plaintiff

23          is entitled to recover punitive and exemplary damages in an amount commensurate with

24          Defendant GRIMES's wrongful acts and sufficient to punish and deter future similar

25          reprehensible conduct.

26   ///

27   ///

28   ///

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

**FIFTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**v. All Defendants**

88.  Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

89.  Defendants' intentional conduct, as set forth herein, was extreme and outrageous.

90.  Defendants intended to cause Plaintiff to suffer extreme emotional distress. Plaintiff suffered extreme emotional distress.

91.  As a further direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to Plaintiff's damage, in an amount according to proof at trial.

92.  Defendants committed the acts alleged herein maliciously, fraudulently, and oppressively with the wrongful intention of injuring Plaintiff from an improper and evil motive amounting to malice and in conscious disregard of Plaintiff's rights. Plaintiff is thus entitled to recover exemplary and punitive damages in amounts to be proven at trial.

**WHEREFORE**, Plaintiff prays for the following relief:

1.  For compensatory damages, including back pay, front pay, and other monetary relief, in an amount according to proof;

2.  For special damages in an amount according to proof;

3.  For punitive damages in an amount necessary to make an example of and to punish Defendants, and to deter future similar misconduct;

4.  For mental and emotional distress damages;

5.  For costs of suit, including attorneys' fees as permitted by law, including those permitted by California Government Code § 12965(b);

6.  For an award of interest, including prejudgment interest, at the legal rate as permitted by law;

7.   For such other and further relief as the Court deems proper and just under all the circumstances.

### DEMAND FOR JURY TRIAL

**PLAINTIFF PAULA DOMINGUEZ** demands a jury trial on all issues in this case.

DATED: July 30, 2025                    **GRUENBERG LAW**

                                        _____
                                        JOSHUA D. GRUENBERG, ESQ.
                                        SAMANTHA N. WASILUK, ESQ.
                                        JULIA A. AGUILAR, ESQ.
                                        Attorneys for Plaintiff,
                                        **PAULA DOMINGUEZ**

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1

2                                    **Exhibit A**

3                            (1) Plaintiff's Right to Sue Letter

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA  92101

STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR
KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

July 25, 2025

Paula Dominguez
2155 First Avenue
San Diego, CA 92101

RE:     **Notice to Complainant**
         CRD Matter Number: 202507-30465525
         Right to Sue: Dominguez / Werner Enterprises, Inc. et al.

Dear Paula Dominguez:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents.  If you do not have an attorney, you must serve the complaint yourself.
Please refer to the attached Notice of Case Closure and Right to Sue for information
regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of
Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2025/02)

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

July 25, 2025

RE:   **Notice of Filing of Discrimination Complaint**
      CRD Matter Number: 202507-30465525
      Right to Sue: Dominguez / Werner Enterprises, Inc. et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave (Government Code sections 12945.2, 12945.6, or 12945.7) has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation.  The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. You may contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

STATE OF CALIFORNIA  |  Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

July 25, 2025

Paula Dominguez
2155 First Avenue
San Diego, CA 92101

RE:     **Notice of Case Closure and Right to Sue**
CRD Matter Number: 202507-30465525
Right to Sue: Dominguez / Werner Enterprises, Inc. et al.

Dear Paula Dominguez:

This letter informs you that the above-referenced complaint filed with the Civil Rights Department (CRD) has been closed effective July 25, 2025 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for CRD's Small Employer Family Leave Mediation Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Reproductive Loss Leave, or Bereavement Leave (Government Code sections 12945.2, 12945.6, or 12945.7) has the right to participate in CRD's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in CRD's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. Contact CRD's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@calcivilrights.ca.gov and include the CRD matter number indicated on the Right to Sue notice.

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency

GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

## Civil Rights Department

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

After receiving a Right-to-Sue notice from CRD, you may have the right to file your complaint with a local government agency that enforces employment anti-discrimination laws if one exists in your area that is authorized to accept your complaint. If you decide to file with a local agency, you must file before the deadline for filing a lawsuit that is on your Right-to-Sue notice. Filing your complaint with a local agency does not prevent you from also filing a lawsuit in court.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this CRD Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

1

2

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
Civil Rights Department
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

3

4

**In the Matter of the Complaint of**

5

Paula Dominguez                                                CRD No. 202507-30465525

6

                                        Complainant,

7

vs.

8

Werner Enterprises, Inc.
10251 Calabash Avenue

9

Fontana, CA 92335

10

Gregory Grimes
2801 O W Curry Drive, Unit 1212

11

Killeen, TX 76542

12

                                        Respondents

13

_____

14

**1.** Respondent **Werner Enterprises, Inc.** is an **employer** subject to suit under the California

15

Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

16

**2**.Complainant is naming **Gregory Grimes** individual as Co-Respondent(s).

17

**3**. Complainant **Paula Dominguez**, resides in the City of **San Diego,** State of **CA.**

18

19

**4.** Complainant alleges that on or about **May 5, 2025**, respondent took the following
adverse actions:

20

21

**Complainant was harassed** because of complainant's sex/gender, gender identity or
expression, sexual orientation, sexual harassment.

22

**Additional Complaint Details:** Although Paula is his legal name, Complainant prefers to be
addressed as "Paul," and his preferred pronouns are he/him.

23

Complainant's Employment with WERNER
On or about February 24, 2025, Complainant began his employment with WERNER at its

24

Fontana terminal, located at 10251 Calabash Avenue, Fontana California 92335. WERNER
employed Complainant as a cross-country class-A truck driver.

25

26

-1-

*Complaint – CRD No. 202507-30465525*

27

Date Filed: July 25, 2025

28

CRD-ENF 80 RS (Revised 2025/02)

On or about March 10, 2025, Complainant was informed by a driver liaison for WERNER that, due to a shortage of available truck driving trainers ("leaders") in California, Complainant would be sent to the WERNER terminal in Dallas, Texas, to be assigned an Over-the-Road trainer.

On or about March 12, 2025, Complainant arrived at the Werner Dallas terminal located at 8701 Peterbilt Avenue, Dallas, Texas 75241. There, Complainant was assigned to Respondent GREGORY GRIMES ("GRIMES") as his leader and direct supervisor.

On or about March 13, 2025, GRIMES picked Complainant up from the Werner Dallas Terminal. GRIMES requested Complainant's driver license and took a photograph of it, which Complainant believed was part of WERNER's standard onboarding procedure. Complainant complied.

Between March 13 and March 16, 2025, GRIMES began sharing unsolicited and highly personal information with Complainant. He disclosed that he was a minister at his church, had served in the military, and worked in law enforcement in California before moving to Texas. He also spoke about his "common law wife" and children and stated that he was looking to cheat on his wife. These disclosures made Complainant uncomfortable and were unrelated to work. Complainant had not invited or encouraged such discussions.

On March 17, 2025, Complainant informed GRIMES of his sexual orientation and gender identity. In that conversation, Complainant explained that he was gay and attracted to women. GRIMES responded positively and commented that it was common for female truckers to be gay.

Complainant is Repeatedly Raped by GRIMES

On or about March 18, 2025, Complainant and GRIMES stopped at a truck stop for the night. GRIMES asked Complainant whether he preferred the top or bottom bunk bed in the truck's can. Complainant indicated he had no preference. GRIMES assigned Complainant the bottom bunk, claiming it was more comfortable.

A few minutes after Complainant laid in bed, GRIMES began a conversation by asking if Complainant was tired. Complainant replied affirmatively. GRIMES stated that he was not very tired and began speaking again about his personal life. He then descended the bunk ladder, retrieved water from the fridge, and sat uninvited on the edge of Complainant's bed. Complainant was visibly uncomfortable and scooted away from him and towards the wall of the truck. GRIMES then said that he was getting sleepy, and Complainant suggested that they both go to sleep since they had to wake up early. GRIMES agreed, then laid down beside Complainant in the same bed without consent. When GRIMES asked if it was okay to lie next to him, Complainant stated, "No, that's not fine. I'm not comfortable with that," or words to that effect. GRIMES attempted to make an excuse that the top bed was less comfortable, to which Complainant offered to switch beds. Complainant then instructed GRIMES to get up so that he could sleep on the top bed.

Suddenly, GRIMES bear hugged Complainant and aggressively told Complainant to listen to him and said, "I have had disobedient students in the past and had them removed from the

-2-
*Complaint – CRD No. 202507-30465525*

Date Filed: July 25, 2025

CRD-ENF 80 RS (Revised 2025/02)

truck," or words to that effect. In that moment, Complainant believed that GRIMES was insinuating that if he did not comply, GRIMES would remove him. GRIMES went on to say, "If I tell WERNER, you don't know what you're doing on the truck, you won't have a job anymore. Do you want your trucking career to end before it even starts?" or words to that effect.

Complainant was in complete shock and froze. As GRIMES held Complainant down, he asked if he could kiss Complainant. Complainant responded, "No, I don't want you to kiss me." GRIMES asked why, and Complainant reminded him that he is not attracted to men, that he likes women. GRIMES expressed attraction towards Complainant and asked to "try anyway," or words to that effect. Complainant again said no. GRIMES continued pressuring him asking about his sexual history, and then declared that because he and his wife were abstinent, he "needed to get it from somewhere." He told Complainant, "You have to listen to me. We can either do this the easy way or the hard way. Either you let me do what I want to do, or you'll see," or words to that effect. GRIMES then explained how he would be untouchable if Complainant ever attempted to report him, claiming that nothing would happen to him given his prior law enforcement background. He also claimed that no one would believe Complainant because he was a minister. GRIMES then asked Complainant, "Yes, or no?" Complainant said no. GRIMES responded, "It's not yes or no if you want to or not – you have to."

GRIMES then forcefully undressed Complainant, took his own clothing off, and proceeded to rape him violently. Complainant screamed during the assault as GRIMES forcefully held him down by his limbs, neck, and hair. While Complainant was screaming, GRIMES said, "Scream all you want. No one would be able to hear you," or words to that effect. Complainant tried to push GRIMES off of him, but due to Complainant's petite size (Complainant weighed eighty-six pounds), his efforts were unsuccessful. The assault lasted over an hour and left visible physical injuries and blood on the bedding.

Between March 18 and April 3, 2025, GRIMES raped Complainant repeatedly in the truck, in various cities across Texas, Oklahoma, Kansas, and Arkansas. Sometimes GRIMES raped Complainant twice a day. GRIMES strangled Complainant several times while he was raping him, reminding him that he had his home address. GRIMES also installed red LED lights in the truck and referred to the lights as "The Red Light Special." When Complainant attempted to leave, GRIMES reminded him, "I can request you to get off my truck and you will fail. Do you want that?" or words to that effect. After each attack, GRIMES followed Complainant to the restrooms and waited outside to ensure Complainant did not speak to anyone. GRIMES also confiscated Complainant's phone during their time together, and when Complainant received or needed to make a call, he instructed Complainant to place the call on speaker phone and to speak in English with the caller.

GRIMES also made homophobic comments towards Complainant after the rapes, spitefully saying, "Guess you're not gay anymore," "You're not gay because I say so," "I thought you said you liked girls," or words to that effect.

-3-
*Complaint – CRD No. 202507-30465525*

Date Filed: July 25, 2025

CRD-ENF 80 RS (Revised 2025/02)

When GRIMES raped Complainant, he used sexual lubrication. Complainant noticed that the first time he brought out the lubrication bottle, it was half empty.

Additionally, after the first rape, GRIMES demanded oral sex. The first time GRIMES demanded oral sex, Complainant, crying and in fear, said "No, just kill me now," to which GRIMES replied, "No. But you will wish you were dead," or words to that effect.

As a result of repeatedly raping Complainant, GRIMES left bruises all over Complainant's legs, ankles, back, arms, wrists, and neck.

On April 3, 2025, GRIMES dropped Complainant off at the WERNER terminal in Dallas so that Complainant could complete his testing. As Complainant was leaving, GRIMES mentioned that he would have another female driver to train and said, "This should be interesting and fun." Complainant interpreted that statement as a threat of future sexual violence.

Later that evening, GRIMES called Complainant and asked if he could deliver a testing document to Complainant's hotel room. Complainant agreed, believing the visit was professional. GRIMES arrived without the document. Once inside, GRIMES made unwanted advances and threatened Complainant, "You better not tell anybody," or words to that effect. GRIMES then forcefully grabbed Complainant and pushed him onto the bed wherein he proceeded to rape him. After the rape, GRIMES ordered Complainant to shower while he watched from the doorway, instructing him to "clean the inside with your fingers," or words to that effect. Complainant believed that GRIMES was attempting to destroy physical evidence of the rape. When GRIMES left the hotel room, he told Complainant that he would be outside the whole night, just in case Complainant wanted to tell anybody what had happened.

On or about April 5, 2025, Complainant returned to California. GRIMES contacted Complainant and reminded him that he had a picture of his California driver's license and knew where he lived. Complainant was scared to report the rapes out of fear that GRIMES would physically hurt him.

On or about April 8, 2025, Complainant got tested for sexually transmitted diseases and tested positive for Chlamydia. Complainant was also diagnosed with cervicitis and vaginitis. Complainant believes that GRIMES transmitted the disease given that GRIMES did not use protection during the repeated assaults.

On or about April 11, 2025, GRIMES called Complainant, claiming he wanted to see how he was doing. However, Complainant believed that GRIMES called him to check if he had reported the rapes to anyone. During the phone call, Complainant told GRIMES used his power and authority as a supervisor to abuse him. GRIMES then acknowledged, "You did not consent and I still did anyway," or words to that effect. GRIMES claimed he would kill himself if Complainant reported him to WERNER, the police, or his wife.

*Complaint – CRD No. 202507-30465525*

Date Filed: July 25, 2025

CRD-ENF 80 RS (Revised 2025/02)

On or about April 15, 2025, GRIMES called Complainant again and acknowledged that he had given Complainant chlamydia.

Complainant is Sexually Harassed by Another Male Truck Driver

On April 13, 2025, Complainant was paired with a new driving partner, David Smith ("Smith"). Within a few days, Smith noticed Complainant frequently suffered from nightmares. Smith persistently questioned Complainant about the nightmares until Complainant disclosed that he had been sexually assaulted by GRIMES. Though Complainant shared limited details of the rapes due to trauma and shame, Smith understood the severity. He told Complainant GRIMES belonged in jail, but also warned Complainant not to mention their conversation out of fear it could jeopardize his own job for failing to report the assault.

During the week that Complainant and Smith worked together, from April 13, 2025, to April 20, 2025, Complainant observed Smith watching pornography on his phone every evening in the driver's seat of the truck. Smith also frequently urinated in a plastic bottle in front of Complainant. Complainant did not see his penis but could hear his urine filling the bottle. These behaviors made Complainant uncomfortable, and he requested reassignment. However, Complainant did not specify to WERNER the reasons why he felt uncomfortable with Smith. WERNER accommodated Complainant's request and partnered him with Aston Douglass ("Douglass").

Complainant's Sexual Assault is Reported to Respondent WERNER

On or about April 17, 2025, Complainant told Douglass about Smith's pornography and urinating in bottles. On her own accord, Douglass then contacted the WERNER Safety Department to report Smith.

On or about April 23, 2025, shortly after Douglass became Complainant's partner, Complainant confided to Douglass that GRIMES had repeatedly assaulted him. With Complainant's permission, Douglass called the WERNER Safety Department again and reported that GRIMES had raped Complainant, that Complainant had visible bruises on his body, that GRIMES had given Complainant a venereal disease, and disclosed Complainant's sexual orientation.

That same day, at approximately 1:30 PM, Complainant had a meeting with Kevin DeGoey ("DeGoey") of Human Resources and "Dixie" Norris ("Norris") of the Placement Driver and Trainer Assignment Department. During this meeting, Complainant reported that GRIMES had repeatedly raped him and disclosed that he was beginning to have suicidal ideations. Consequently, DeGoey and Norris told Complainant he would need to be medically cleared to drive.

On or about April 30, 2025, Complainant had another meeting with DeGoey and Norris. However, the meeting was cut short due to cell phone reception. Oddly, DeGoey and Norris told Complainant that he needed to be medically cleared to drive because he was taking antibiotics. Complainant found the nonsensical, given that the antibiotics did not impair his ability to drive. The call was rescheduled for May 1, 2025.

-5-
*Complaint – CRD No. 202507-30465525*

Date Filed: July 25, 2025

1   On or about May 1, 2025, Complainant participated in a rescheduled meeting with DeGoey
2   and Norris, during which he provided detailed information about the rapes that occurred
    between March 18 and April 3. The conversation lasted over forty-five minutes. Complainant
3   also shared his belief that GRIMES had previously raped other female drivers and that he
    would continue to do so.

4   On or about May 1, 2025, Complainant spoke with "Shawnaye" from WERNER's Safety
5   Department. During this call, Complainant was told that he would need medical clearance to
    drive due to his suicidal ideations.
6   Complainant Takes Medical Leave
    On or about May 5, 2025, Complainant started his medical leave due to his struggling
7   mental health. Complainant is currently on unpaid medical leave.

8   As a result of Respondent GRIMES' sexual assault and Respondent WERNERS' failure to
    prevent sexual harassment, Complainant suffered and continues to suffer extreme
9   emotional distress, anxiety, stress, and other damages.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26                                              -6-
                                *Complaint – CRD No. 202507-30465525*
27
    Date Filed: July 25, 2025
28

VERIFICATION

I, **Julia Aguilar**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true. The matters alleged are based on information and belief, which I believe to be true.

On July 25, 2025, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**San Diego, CA**

-7-
*Complaint – CRD No. 202507-30465525*

Date Filed: July 25, 2025

CRD-ENF 80 RS (Revised 2025/02)

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: | FOR COURT USE ONLY |
|---|---|---|

NAME: Joshua Gruenberg, Esq. SB #163281, Samantha Wasiluk, Esq. SB #345660
FIRM NAME: GRUENBERG LAW
STREET ADDRESS: 2155 First Avenue
CITY: San Diego          STATE: CA    ZIP CODE: 92101
TELEPHONE NO.: 619-230-1234          FAX NO.:
E-MAIL ADDRESS: josh@gruenberglaw.com
ATTORNEY FOR (Name): Plaintiff, Paula Dominguez

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO
STREET ADDRESS: 247 W. 3rd St.
MAILING ADDRESS:
CITY AND ZIP CODE: San Bernardino, CA 92415
BRANCH NAME: San Bernardino Justice Center

Plaintiff/Petitioner: Paula Dominguez
Defendant/Respondent: Werner Enterprises, Inc.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: CIVSB2522028 |
|---|---|

TO (insert name of party being served): Werner Enterprises, Inc. c/o Peter B. Maretz, Esq.

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: August 14, 2025

Michael Mendez
(TYPE OR PRINT NAME)

(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):

1. ☐ A copy of the summons and of the complaint.
2. ☒ Other (specify):

Civil Complaint, Civil Case Cover Sheet, Summons, and Certificate of Assignment

**(To be completed by recipient):**

Date this form is signed: _____

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO

PAULA DOMINGUEZ

vs.

WERNER ENTERPRISES, INC., et al.

Case No.: CIVSB2522028

**CERTIFICATE OF ASSIGNMENT**

A civil action or proceeding presented for filing must be accompanied by this Certificate. If the ground is the residence of a party, name and residence shall be stated.

The undersigned declares that the above-entitled matter is filed for proceedings in the San Bernardino District of the Superior Court under Rule131 and General Order of this court for the checked reason:

■ General    ☐ Collection

| | **Nature of Action** | **Ground** |
|---|---|---|
| ☐ | 1. Adoption | Petitioner resides within the district . |
| ☐ | 2. Conservator | Petitioner or conservatee resides within the district. |
| ☐ | 3. Contract | Performance in the district is expressly provided for. |
| ☐ | 4. Equity | The cause of action arose within the district. |
| ☐ | 5. Eminent Domain | The property is located within the district. |
| ☐ | 6. Family Law | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 7. Guardianship | Petitioner or ward resides within the district or has property within the district. |
| ☐ | 8. Harassment | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 9. Mandate | The defendant functions wholly within the district. |
| ☐ | 10. Name Change | The petitioner resides within the district. |
| ☐ | 11. Personal Injury | The injury occurred within the district. |
| ☐ | 12. Personal Property | The property is located within the district. |
| ☐ | 13. Probate | Decedent resided or resides within or had property within the district. |
| ☐ | 14. Prohibition | The defendant functions wholly within the district. |
| ☐ | 15. Review | The defendant functions wholly within the district. |
| ☐ | 16. Title to Real Property | The property is located within the district. |
| ☐ | 17. Transferred Action | The lower court is located within the district. |
| ☐ | 18. Unlawful Detainer | The property is located within the district. |
| ☐ | 19. Domestic Violence | The petitioner, defendant, plaintiff or respondent resides within the district. |
| ☐ | 20. Other | |
| ✓ | 21. THIS FILING WOULD | NORMALLY FALL WITHIN JURISDICTION OF SUPERIOR COURT |

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this case for filing in the above-designed district is:

WERNER ENTERPRISES, INC. - Defendant
NAME – INDICATE TITLE OR OTHER QUALIFYING FACTOR

10251 Calabash Ave
ADDRESS

Fontana
CITY

CA
STATE

92335
ZIP CODE

I declare, under penalty of perjury, that the foregoing is true and correct and that this declaration was executed on 7/30/25 at San Diego ,
California.

_____
*Signature of Attorney/Party*

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | *for court use only* |
|---|---|
| Attorney(s) Name and Address<br>JOSHUA D. GRUENBERG, ESQ., SB #163281<br>SAMANTHA WASILUK, ESQ. SB #345660<br>GRUENBERG LAW<br>2155 First Ave, San Diego, CA 92101 | |
| Name of Case (abbreviated)<br>**Dominguez v. Werner Enterprises, Inc.** | |

| Attorney(s) For | Telephone | Hearing Date        Time        Dept | Case Number |
|---|---|---|---|
| Plaintiff | (619) 230-1234 | | CIVSB2522028 |

<u>PROOF OF SERVICE</u>

       I, the undersigned, declare that I am over the age of 18 years and not a party to this action; I am employed in the County of San Diego, State of California, within which County the subject mailing occurred; my business address is 2155 First Avenue, San Diego, CA 92101.

       On August 14, 2025, I served the following document(s):

    1.    **<u>PLAINTIFF'S COMPLAINT;</u>**
    2.    **<u>PLAINTIFF'S SUMMONS;</u>**
    3.    **<u>CIVIL CASE COVER SHEET;</u>**
    4.    **<u>CERTIFICATE OF ASSIGNMENT; and</u>**
    5.    **<u>NOTICE AND ACKNOWLEDGMENT OF RECEIPT.</u>**

[]    **Service By Mail:**  I am familiar with attorney JOSHUA D. GRUENBERG'S practice for collection and processing correspondence for mailing with the United States Postal Service the same day in the ordinary course of business. By placing a true copy of each document in a separate envelope addressed to each addressee. By placing each for deposit in the United States Postal Service, this same day, following ordinary business practices.

[X]    **By Electronic Transmission**:  I caused such document(s) to be served by e-mail on the addressee(s) listed below. In light of the COVID-19 pandemic in California and Governor Newsom's Executive Order N-38-20, dated March 27, 2020, the requirements under Code of Civil Procedure section 1010.6 regarding agreement to electronic service have been suspended.  Accordingly, all documents served in this matter will be done by electronic means consistent with other provisions of the Code of Civil Procedure.

Peter B. Maretz, Esq.                    **Attorneys for Defendant Werner Enterprises, Inc.**
Pmaretz@stokeswagner.com
Crivera@stokeswagner.com
Lramos@stokeswagner.com

       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on August 14, 2025**,** at San Diego, California.

                                          _____
                                                Michael Mendez

# **<u>EXHIBIT B</u>**

# Experian Credit Header Real Time (1)

To Summary

| CREDIT HEADER REAL TIME | |
|---|---|

| | |
|---|---|
| **Current Date:** | 07/18/2025 |
| **Source:** | Experian Credit Header |

| | |
|---|---|
| **Best Address:** | |

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

# Household Records (1)

To Summary

| People Finder Household-Centric Record | |
|---|---|

| | | | |
|---|---|---|---|
| **Information Current Through:** | 04/25/2025 | **Address:** | 13603 LANCELOT AVE NORWALK, CA 90650-4442 |
| **Database Last Updated:** | 07/12/2025 | **County:** | LOS ANGELES |
| **Update Frequency:** | MONTHLY | **Latitude/Longitude:** | 33.907695/-118.063418 |
| **Current Date:** | 07/18/2025 | **Residence Type:** | SINGLE FAMILY DWELLING |
| **Source:** | Data by Data Axle, Copyright © 2025, All Rights Reserved. | **Address First Reported:** | 12/01/2023 |

| | |
|---|---|
| **Head of Household:** | PAULAESTHER D AGUAYO |
| **Name/Address Confirmed:** | 06/21/2025 |
| **Marital Status:** | MARRIED |

The data provided to you by WESTLAW may not be used as a factor in establishing a consumer's eligibility for credit, insurance, employment, or for any other purpose authorized under the FCRA.

## 13603 LANCELOT AVE NORWALK, CA 90650-4442 | **Full-Text**

| Address First Reported: | 12/01/2023 | Confidence Score: | N/A |
|---|---|---|---|
| Name | Role | Date of Birth | Name/Address Confirmed: |
| PAULAESTHER D AGUAYO | Head of Household | N/A | 06/21/2025 |

**Relatives Analysis**

## PAULAESTHER DOMINGUEZ AGUAYO

| Relative of: | PAULAESTHER D AGUAYO | Degree of Separation: | 1 |
|---|---|---|---|
| SSN: | 613-84-XXXX - issued in CA in 1995 | DOB: | 09/XX/1995 (Age: 29) |

| Possible AKA | SSN | DOB |
|---|---|---|
| PAULA E AGUAYO | 613-84-XXXX | 09/XX/1995 |
| PAULAESTHER DOMINGUEZ AGUAYO | | |

\* Match with one of the subject's addresses

| Date Range | Address | Phone |
|---|---|---|
| Reported 12/01/2023 - 03/12/2025 | * 13603 LANCELOT AVE, NORWALK, CA 90650-4442 \| LOS ANGELES County | N/A |
| Reported 01/01/2010 - 08/25/2022 | 1912 E 122ND ST, COMPTON, CA 90222-1223 \| LOS ANGELES County | N/A |
| Reported 06/10/2021 - 06/10/2021 | 3390 WRIGHT RD, CAMARILLO, CA 93010-8539 \| VENTURA County | N/A |

## SUZETTE DOMINGUEZ AGUAYO

| Relative of: | PAULAESTHER D AGUAYO | Degree of Separation: | 1 |
|---|---|---|---|
| SSN: | 608-98-XXXX - issued in CA in 1997 | DOB: | 06/XX/1997 (Age: 28) |

| Possible AKA | SSN | DOB |
|---|---|---|
| SUZETTE DOMINGUEZ AGUAYO | | |

The data provided to you by WESTLAW may not be used as a factor in establishing a consumer's eligibility for credit, insurance, employment, or for any other purpose authorized under the FCRA.